IN THE UNITED STATES DISTRICT COURT
FOR THE  NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG


**MONTGOMERY CARL AKERS,**

**Plaintiff,**


**v.**                                                    **CIVIL ACTION NO. 3:22-CV-148
(GROH)**


**JASON SIMMONS,
JAMIE CONOVER,
KATHY S. HILL,
NATHAN SIMPINS,
EVELYN KELLER, and
ALL UNNAMED PERSONNEL EMPLOYED
ACTIVELY BY THE COUNTER TERRORISM
UNIT AND THOSE INACTIVE AND/OR RETIRED
OF THE US DEPARTMENT OF JUSTICE
STATIONED AT MARTINSBURG, WV, FROM
NOVEMBER 29, 2010 UNTIL THE PRESENT DAY,**


**Defendants.**



<u>**REPORT AND RECOMMENDATION**</u>

**I.        INTRODUCTION**

On August 29, 2022, the *pro se* Plaintiff,  who is a  federal prisoner incarcerated at

Marion USP, in Marion, Illinois,  initiated  this  case  by  filing  an  action  pursuant to <u>Bivens</u>

<u>v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>,  403  U.S.  388  (1971),

claiming his Constitutional rights were violated. ECF  No.  1.[1] Plaintiff was ordered to pay

an initial partial filing fee of $23.78 on September 7, 2022. ECF No. 6. On September 26,

---

[1] All CM/ECF numbers cited herein are from the instant case, 3:22-CV-111, unless otherwise noted.

2022, Plaintiff filed a response to the order which alleged that his inmate trust account information was provided by his case manager who is a named defendant, and whom Plaintiff alleges "provided inaccurate and misleading information to the Court". ECF No. 9 at 1.

The matter is now before the undersigned for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR PL P 2. For the reasons set forth below, the undersigned recommends that the complaint be denied and dismissed with prejudice.

## II. FACTUAL AND PROCEDURAL HISTORY

A search of PACER provides results that Plaintiff, Montgomery C. Akers, is a party to at least 182 separate actions in the following federal courts: the Court of Appeals for the First, Fourth, Seventh, Eighth, Ninth, Tenth, and District of Columbia Circuits; and the District Courts for California Central, California Northern, Colorado, District of Columbia, Illinois Southern, Kansas, Kentucky Eastern, Maine, Maryland, Missouri Western, Montana, New Hampshire, New Mexico, Nevada, New York Southern, Oklahoma Western, Oregon, Utah, and West Virginia Northern. By his own acknowledgement, Plaintiff had "numerous lawsuits . . . ongoing in state and federal courts" at the time he filed his complaint. ECF No. 1 at 9. Plaintiff also has a long history of financial crimes prosecuted in federal courts.

### A.      Federal Charges in the District of Utah

A review of PACER shows that Plaintiff was charged in two separate cases in the District of Utah in case numbers 2:1989-CR-230, and 2:1990-CR-78. Based on the age of

the cases, further information is unavailable through PACER. A newspaper article from

the *Deseret News* dated December 24, 1989, states that:

> David Gonzales, wanted by a number of jurisdictions around the Western United States, was arraigned before a federal magistrate in Salt Lake City on Friday on two forgery-related felony counts.
>
> Gonzales, also known as Montgomery Carl Akers, pleaded not guilty to charges of making and cashing a check for $363.78 in the name of Del Monte Corp. on or about Dec. 14. The grand jury indictment further alleges that Gonzales possessed approximately 500 checks in Del Monte's name without the company's authorization and used the checks in an illegal and fraudulent manner.

https://www.deseret.com/1989/12/24/18838173/fugitive-arraigned-on-2-felony-counts.

### B.      Federal Conviction in the District of Colorado

In the District of Colorado, case number 1:1996-CR-13, Plaintiff was convicted on October 6, 1997, of fourteen counts of bank fraud and one count of uttering and possessing a counterfeit security with intent to deceive.[2] United States v. Akers, 215 F.3d 1089, 1093, 1096 (10th Cir. 2000), *cert. denied* 531 U.S. 1023 (2000). On February 18, 1999, Petitioner was sentenced to 105 months' imprisonment, an upward departure from the United States Sentencing Guidelines. Id. at 1096, 1104. The Court of Appeals for the Tenth Circuit affirmed Petitioner's conviction and sentence by order issued June 12, 2000. United States v. Akers, 215 F.3d 1089 (10th Cir. 2000).

---

[2] As noted by the Tenth Circuit, "Akers was also charged with failure to appear as required by the conditions of his pretrial release in violation of 18 U.S.C. § 3146(a)(1). This count was severed and tried separately from the bank fraud charges and the counterfeit security charge. Akers has not appealed from the judgment of conviction for failure to appear." 215 F.3d. 1089, 1093, n. 1.

**C. Federal Conviction in the District of Kansas**

Plaintiff was convicted of one count of wire fraud in violation of 18 U.S.C. § 1343, pursuant to a plea agreement in the District of Kansas. United States v. Akers, 317 F. App'x 798, 799 (10th Cir. 2009). The District Court departed upward from the advisory Sentencing Guidelines range and sentenced Petitioner to 327 months of imprisonment. Id. at 799. "Mr. Akers initiated new fraudulent schemes after his plea and while he was awaiting sentencing." Id. at 803, citing Akers I[3], 261 Fed. Appx. 110, 112-13 (10th Cir. 2008).

Akers I summarizes the criminal enterprise conducted by Plaintiff while he was incarcerated on his Colorado sentence:

> While serving a 105-month sentence at the federal penitentiary in Leavenworth, Kansas, for fourteen counts of bank fraud, one count of making, uttering and possessing a counterfeit security, and one count of failure to appear, Akers placed an advertisement for a pen pal in a magazine. Anita Jenkins answered the ad and began corresponding with Akers in writing and on the telephone. Akers convinced Jenkins he had been falsely accused, told her he had a trust fund account and asked her to help him re-start a business he had prior to his incarceration. Jenkins agreed to help him. Akers sent her a power of attorney and had her purchase computer software which would allow her to create checks. He also had her open accounts at Fidelity Brokerage Services (Fidelity) and First Union Bank.
>
> After these accounts were opened, Akers directed Jenkins to create two checks in the amounts of $35,000 and $25,000 and deposit them into the Fidelity account. He provided her the routing and account numbers. She believed the money was coming from his trust fund account. Akers then directed Jenkins to wire $58,000 from the Fidelity account to the First Union Bank account. Jenkins later created a third check for $35,000 and deposited it into the Fidelity account. Jenkins

---

[3] Akers II, 281 Fed. Appx. 844 (10th Cir. 2008), was an appeal by the government to enforce the appeal waiver contained in Plaintiff's plea agreement. The Court of Appeals granted the government's motion to enforce the appeal waiver and dismissed the appeal. Id.

also created checks or initiated wire transfers totaling $57,000 from the First Union Bank account to various individuals. Jenkins did not learn she was creating worthless checks and engaging in fraudulent activity until she was contacted by law enforcement officers. As a result of the above scheme, Fidelity and Bank of America (which negotiates Fidelity's financial transactions) suffered actual losses of $22,236.77 and $20,000, respectively. Akers was subsequently indicted with five counts of wire fraud.

Akers I, 261 F. App'x at 111. While the indictment for wire fraud related to Jenkins was

pending:

Akers was housed at the Corrections Corporation of America (CCA) in Leavenworth, Kansas, where he met fellow inmate Donald Mixan. Akers told Mixan he was wealthy and showed him paperwork indicating he had an account containing over $7 million. Although he initially believed Akers, Mixan soon realized it was a scam. Nevertheless, Mixan agreed to help Akers because it was "[e]asy money." (R. Vol. IV at 150.) Once Mixan was released, Akers had him purchase check-writing software and apply for credit cards. Akers directed Mixan to use the credit cards for his living expenses; the cards' balances were paid from accounts which had no money in them.

Akers instructed Mixan to send two checks totaling $150,000 to an attorney Akers wanted to retain. These checks were intercepted by law enforcement officers. Because the attorney never received the checks, Mixan personally delivered a third check for $100,000 to him. Two more checks, in the amounts of $25,000 and $2,700, were sent to Akers's alleged wife and Mixan's landlord, respectively. All five checks were drawn on a U.S. Bank account that Mixan opened for Akers over the Internet with a $400 counterfeit check. Mixan also created a check for $2,500 using an account number he found in a dumpster. This check was deposited, at Akers's direction, into one of Akers's bank accounts. Akers further directed Mixan to create a $117,000 check and deposit it into another one of Akers's bank accounts. Fortunately, the banks involved in this scheme were able to avoid incurring financial loss by freezing the accounts or intercepting, dishonoring or returning the checks to the payee. However, the scheme did result in an actual loss of $2,037.21 to various businesses.
. . .

5

> The government filed a superseding indictment against
> Akers which, in addition to the five counts of wire fraud
> alleged in the original indictment, included a conspiracy to
> commit bank fraud count related to Akers's activities with
> Mixan, who was named as a co-defendant. Akers pled guilty
> to one count of wire fraud.

Akers I, 261 F. App'x at 112. The Tenth Circuit affirmed Plaintiff conviction and sentence

on the Kansas charges on January 16, 2008. Id.

### D.    Instant Bivens Complaint

Plaintiff's complaint lists five named defendants: (1) Jason Simmons ("Simmons"),

Chief, Counter Terrori[s]m Unit [CTU], USDOJ, CTU/Operations Center, in Martinsburg,

West Virginia; (2) Jamie Conover ("Conover"), "Alleged 'Intelligence Analyst", CTU

Martinsburg, West Virginia; (3) Kathy S. Hill ("Hill"), Intelligence Research Specialist, CTU

Martinsburg, West Virginia; (4) Nathan Simpkins ("Simpkins"), Case Manager, CTU

Martinsburg, West Virginia; and (5) Evelyn Keller ("Keller"), Discipline Hearing Officer,

Federal Bureau of Prisons, North Central Regional Office, Kansas City, Kansas. ECF No.

1 at 2 – 3. Plaintiff further names as a Defendant "all unnamed and unknown personnel of

the CTU" in Martinsburg, West Virginia. Id. at 4. Although he is incarcerated in Marion,

Illinois, Plaintiff alleges that the events concerning his complaint all occurred at the Bureau

of Prisons Counter Terrorism Unit located in Martinsburg, West Virginia. Id.

The complaint asserts three claims for relief. First, Plaintiff alleges that that since

November 29, 2010, he has been incarcerated in the Communication Management Unit

(CMU) of USP Marion[4] and "subjected to conditions of confinement designed for

---

[4] The BOP website lists USP Marion as a "medium security U.S. penitentiary with an adjacent minimum security satellite camp." https://www.bop.gov/locations/institutions/mar/. Further, the BOP website describes its two Communication Management Units, including the unit at USP Marion:

CMUs were established in 2006 and 2008, respectively, to house inmates who, due to their current

terrorists", and asserts that he was "transferred custody to the Counter Terrorism Unit of the USDOJ" without lawful authority. ECF No. 1 at 7 – 8. Plaintiff further contends that his wire fraud conviction under 18 U.S.C. § 1343 did not subject him to conditions as a convicted terrorist. Id. at 8. Plaintiff claims that he has been deprived of medical and dental treatment, however, he does not specify dates when he claims he was denied treatment. Id. at 9. More specifically, Plaintiff alleges that he has been denied medication for asthma and atrial fibrillation. Id. at 10. Additionally, Plaintiff claims that he has been the subject of more than 20 "bogus" incident reports since 2010, and that he has been threatened with placement in the Special Housing Unit (SHU). Id. at 10. While in the CMU, Plaintiff also complains that in regard to a Disciplinary Hearing on August 17, 2022, Simpkins contacted persons known to Plaintiff and "was able to destroy the relationship between Akers and [an] attorney Donald F. Kochersber III, and a man named Chris Peeler of Texas," and Plaintiff's relationship with Newell Coach Corporation in Oklahoma. Id. at 9.

Second, Plaintiff alleges that he is being denied meaningful access to this court and every other court. ECF No. 1 at 8. Plaintiff asserts that the Defendants have claimed

---

offense of conviction, offense conduct, or other verified information, require increased monitoring of communications between the inmate and persons in the community to protect the safety, security, and orderly operation of the BOP and to protect the public. Inmates designated to the CMU may have been convicted of, or associated with, terrorism or terrorist organization, repetitively attempted to contact their victims; and/or attempted illegal activities through approved communication methods and/or received extensive disciplinary action due to misuse of approved communicating methods.

The CMU is a general population unit, with access to customary inmate activities, such as recreation, religious services, and education programming. All communications, however, are subject to increased monitoring. All incoming and outgoing general correspondence is reviewed by staff prior to delivery to the inmate or delivered for mailing through the U. S. Postal Service. Telephone communication and social visits are limited, live-monitored by staff; and must occur in only in English unless conducted through simultaneous translation monitoring.

https://www.bop.gov/resources/pdfs/legal_guide.pdf.

Plaintiff is classified as a terrorist and BOP policy does not apply to inmates of the CMU. Id.

Finally, Plaintiff contends that he is being denied "meaningful familial relations" and relations with friends and associates, which Plaintiff asserts is psychological punishment. Id.

Plaintiff asserts the following injuries: (1) that he was placed in a confinement setting not authorized by his sentencing court; and (2) he was "denied meaningful access to the courts and [his] friend and family". Id. at 11. In his request for relief, Plaintiff asks the court to award him: (1) compensatory monetary damages in the amount of $10,000,000.00 from each defendant; (2) "injunctive relief as to [his] ability to send and receive communications"; (3) removal from the CMU unit; (4) an emergency hearing as to his conditions of confinement; (5) an order permitting him to "unobstructively communicate with this court and other courts and his lawyers and professionals" and his family and friends; and (6) cease and desist from physical and psychological renditions and torture by CMU/CTU staff. Id.

### III. LEGAL STANDARD

#### A.     Pro Se Litigants

Courts must read *pro se* allegations in a liberal fashion and hold those pro se pleadings "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a

defendant who is immune from such relief. A complaint is frivolous if it is without arguable

merit either in law or in fact. <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989) (superseded

by statute). The Supreme Court in <u>Neitzke</u> recognized that:

> Section 1915(d)[5] is designed largely to discourage the filing
> of, and waste of judicial and private resources upon, baseless
> lawsuits that paying litigants generally do not initiate because
> of the costs of bringing suit and because of the threat of
> sanctions for bringing vexatious suits under Federal Rule of
> Civil Procedure 11. To this end, the statute accords judges
> not only the authority to dismiss a claim based on an
> indisputably meritless legal theory, but also the unusual
> power to pierce the veil of the complaint's factual allegations
> and dismiss those claims whose factual contentions are
> clearly baseless.

490 U.S. at 327. Frivolity dismissals should only be ordered when the legal theories are

"indisputably meritless." <u>Id.</u>

### B.    Failure to State a Claim

The Federal Rules of Civil Procedure require only "'a short and plain statement of

the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair

notice of what the . . . claim is and the grounds upon which it rests.'" <u>Bell Atlantic Corp. v.</u>

<u>Twombly</u>, 550 U.S. 544, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47, 78 S.Ct.

99 (1957)). Courts long have cited, "the accepted rule that a complaint should not be

dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can

prove no set of facts in support of his claim which would entitle him to relief." <u>Conley</u>,

---

[5] The version of 28 U.S.C. § 1915(d) which was effective when <u>Neitzke</u> was decided provided, "The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious." As of April 26, 1996, the statute was revised and 28 U.S.C. § 1915A(b) now provides, "On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."

355 U.S. at 45-46.

Plaintiff is proceeding *pro se* and therefore the Court must liberally construe his pleadings. Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285 (1976); Haines v. Kerner, 404 U.S. 519, 520 - 1, 92 S.Ct. 594, 596 (1972) (per curiam); Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197 (2007). While *pro se* pleadings are held to a less stringent standard than those drafted by attorneys, even under this less stringent standard, a *pro se* complaint is still subject to dismissal. Haines, 404 U.S. at 520–21. "[T]he mandated liberal construction afforded to pro se pleadings 'means that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so.'" Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir.1999). However, "judges are [ ] not required to construct a party's legal arguments for him." Small v. Endicott, 998 F.2d 411, 417 - 8 (7th Cir.1993).

Although a complaint need not contain detailed factual allegations, a plaintiff's obligation in pleading "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...." Bell Atlantic Corp. v. Twombly, 550 U.S. at 555 (2007). Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face." Id. at 555, 570. In Twombly, the Supreme Court found that "because the plaintiffs [ ] have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. at 570. Thus, a plaintiff must state a plausible claim in his complaint which is based on cognizable legal authority and includes more than conclusory or speculative factual allegations.

###### C.      Civil Rights Actions Under Bivens.

In Bivens, supra, the Supreme Court recognized that claimants may assert a cause of action for damages caused by federal agents. In FDIC v. Meyer, 510 U.S. 471, 484 - 86 (1994), the Court held that federal agencies may not be held liable in a Bivens claim, writing, "*Bivens* from its inception has been based . . . on the deterrence of individual officers who commit unconstitutional acts." Id. See Correctional Services Corp. v. Malesko, 534 U.S. 61, 71 (2001).

Pursuant to Bivens, an individual federal agent may be found liable for actions "in excess of the authority delegated to him." 403 U.S. at 397. "The purpose of *Bivens* is to deter individual federal officers from committing constitutional violations." Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 70 (2001). The Supreme Court further explained in Malesko:

> If a federal prisoner in a BOP facility alleges a constitutional deprivation, he may bring a *Bivens* claim against the offending individual officer, subject to the defense of qualified immunity. The prisoner may not bring a *Bivens* claim against the officer's employer, the United States, or the BOP. With respect to the alleged constitutional deprivation, his only remedy lies against the individual.

534 U.S. at 72. Further, in a Bivens case, the Plaintiff must specify the acts taken by each defendant which violate his Constitutional rights. Wright v. Smith, 21 F.3d 496, 501 (2nd Cir. 1994); See Colburn v. Upper Darby Township, 838 F.2d 663, 666 (3rd Cir. 1988) ("section 1983 claims[6] [have] the additional pleading requirement that the 'complaint

---

[6] The Court notes that Bivens actions and § 1983 actions are both civil rights actions, and that Bivens actions regarding deprivation of civil rights have long been considered as the federal counterpart to state actions authorized by 42 U.S.C. § 1983. As discussed below, Egbert v. Boule, 142 S.Ct. 1793 (2022), explains the difference between the statutorily created remedy under § 1983, and the judicially created remedies established by Bivens and its progeny.

contain a modicum of factual specificity identifying the particular conduct of defendants that is alleged to have harmed the plaintiffs'").

In <u>Bivens</u>, the Supreme Court held that it had the authority, "under general principles of jurisdiction" to "create 'a cause of action under the Fourth Amendment' against federal agents who allegedly manacled the plaintiff and threatened his family while arresting him for narcotics violations." <u>Egbert</u>, 142 S.Ct. at 1802. After <u>Bivens</u> was decided, the Supreme Court twice, "fashioned new causes of action under the Constitution—first, for a former congressional staffer's Fifth Amendment sex-discrimination claim, see *Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979); and second, for a federal prisoner's inadequate-care claim under the Eighth Amendment, see *Carlson v. Green*, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)." <u>Egbert</u>, 142 S.Ct. at 1802.

However, the Supreme Court has cautioned that implied remedies have been found in limited circumstances[7], and the judiciary should not "assume[ ] common-law

---

[7] The Supreme Court in <u>Egbert</u>, 142 S.Ct. at 1799 - 1800, noted that it has declined to imply a similar cause of action for alleged constitutional violations in the following instances: <u>Chappell v. Wallace</u>, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983) (race discrimination suit brought by enlisted naval men); <u>Bush v. Lucas</u>, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983) (aerospace engineer's First Amendment defamation and retaliation suit against director of federal space flight center); <u>United States v. Stanley</u>, 483 U.S. 669, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987) (military veteran who volunteered for chemical warfare testing program sued for being unknowingly being administered LSD which caused psychological and personality changes); <u>Schweiker v. Chilicky</u>, 487 U.S. 412, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988) (improper denial of Social Security benefits, allegedly as result of due process violations); <u>FDIC v. Meyer</u>, 510 U.S. 471, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994) (terminated employee's Fifth Amendment suit claiming deprivation of a property right without due process); <u>Correctional Services Corp. v. Malesko</u>, 534 U.S. 61, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001) (federal inmate with a heart condition who was assigned to a Community Correctional Center's fifth floor bedroom suffered a heart attack and fell, after defendant's employee required inmate to use the stairs instead of the elevator to reach his bedroom); <u>Wilkie v. Robbins</u>, 551 U.S. 537, 127 S.Ct. 2588, 168 L.Ed.2d 389 (2007) (commercial rancher's Racketeer Influences and Corrupt Organizations Act (RICO) and <u>Bivens</u> claims against Bureau of Land Management (BLM) for allegedly using extortion to force rancher to grant an easement to BLM was without merit); <u>Hui v. Castaneda</u>, 559 U.S. 799, 130 S.Ct. 1845, 176 L.Ed.2d 703 (2010) (survivors of immigration detainee sued after detainee persistently sought, but was denied medical treatment, and later died of metastatic cancer, based on immunity for U.S. Public Health Service employees); <u>Minneci v. Pollard</u>, 565 U.S. 118, 132 S.Ct. 617, 181 L.Ed.2d 606 (2012) (federal inmate sued for denial of adequate medical care by employees at

powers to create causes of action." Egbert v. Boule, 142 S.Ct. 1793, 1802 (2022) (quoting

Malesko, 534 U.S. at 75). In Egbert, the Supreme Court held that, "[a]t bottom, creating

a cause of action is a legislative endeavor. Courts engaged in that unenviable task must

evaluate a 'range of policy considerations . . . at least as broad as the range . . . a

legislature would consider.'" 142 S.Ct. at 1802, quoting Hernandez v. Mesa, 589 U.S. at

—, 140 S.Ct. at 741 (2020).

Further, the Egbert court explained that to recognize new Bivens remedies, a court

must make a two-step inquiry to determine if: (1) the case presents a new Bivens context

which is meaningfully different from the three cases in which the Supreme Court has

implied a damages action; and (2) if the claim does arise in such a new context, whether

there are special factors which indicate that Congress is better equipped than the judiciary

to weigh the costs and benefits of allowing a damages action. Significantly, the Supreme

Court wrote that, [i]f there is even a single "reason to pause before applying *Bivens* in a

new context," a court may not recognize a *Bivens* remedy." 142 S.Ct. at 1803,

quoting Hernández, 589 U. S., at ——, 140 S.Ct., at 743. The Supreme Court further

explained:

> Finally, our cases hold that a court may not fashion
> a *Bivens* remedy if Congress already has provided, or has
> authorized the Executive to provide, an alternative remedial
> structure. If there are alternative remedial structures in place,
> that alone, like any special factor, is reason enough to limit the
> power of the Judiciary to infer a new *Bivens* cause of action.
> Importantly,      the     relevant    question     is    not    whether

---

privately run federal prison, was without relief under Bivens because state tort law authorized adequate
alternative damages actions); Ziglar v. Abbasi, 582 U. S. —, 137 S.Ct. 1843, 198 L.Ed.2d 290 (2017) (alien
detained after September 11 terrorist attack filed suit alleging harsh and punitive pre-trial conditions in
violation of Fifth Amendment); Hernández v. Mesa, 589 U. S. —, 140 S.Ct. 735, 206 L.Ed.2d 29 (2020)
(parents of 15-year old Mexican child shot and killed by United States Border Patrol agent across US-
Mexico border after child crossed into US territory and returned to Mexico, not entitled to relief under theory
of Bivens liability for violations of Fourth or Fifth Amendments).

13

> a *Bivens* action would disrupt a remedial scheme, or whether the court should provide for a wrong that would otherwise go unredressed. Nor does it matter that existing remedies do not provide complete relief. **Rather, the court must ask only whether it, rather than the political branches, is better equipped to decide whether existing remedies should be augmented by the creation of a new judicial remedy.**

142 S. Ct. at 1803 – 04 (emphasis added) (cleaned up).

### D.      Requests for Injunctive Relief

The Fourth Circuit reviews "a district court's decision to grant a preliminary injunction under an abuse-of-discretion standard." International Refugee Assistance Project v. Trump, 883 F.3d 233, 255 – 56 (4th Cir. 2018), as amended (Feb. 28, 2018). The standard for granting injunctive relief was articulated by the United States Supreme Court which held in Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008) that:

> A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.

As restated by the Fourth Circuit, when a plaintiff seeks the extraordinary remedy of a preliminary injunction:

> The plaintiff "need not establish a certainty of success, but must make a clear showing that he is likely to succeed at trial." A plaintiff seeking a preliminary injunction must establish that (1) she is likely to succeed on the merits, (2) she is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in her favor, and (4) an injunction is in the public interest.

Int'l Refugee, 883 F.3d at 256 (citing WV Ass'n of Club Owners & Fraternal Servs., Inc. v. Musgrave, 553 F.3d 292, 298 (4th Cir. 2009) (citing Winter, 555 U.S. at 7)). This standard becomes even more exacting when a plaintiff seeks a preliminary injunction that

mandates action, as contrasted with the typical form of a preliminary injunction that merely preserves the status quo. See East Tennessee Natural Gas Co. v. Sage, 361 Fed 3d 808, 828 (4th Cir. 2004) (quoting Wetzel v. Edwards, 635 F.2d 283, 286 (4th Cir. 1980)) (noting that "mandatory preliminary injunctions do not preserve the status quo and normally should be granted only in those circumstances when the exigencies of the situation demands such relief").

## IV. ANALYSIS

A review of the complaint pursuant to 28 U.S.C. § 1915A(b), reveals that Plaintiff fails to present a claim upon which relief can be granted.

### A.    Lack of Physical Injury

The Prison Litigation Reform Act (PLRA) of 1996, placed an important limitation upon all actions arising from incarceration, requiring proof of physical injury arising from the allegedly unconstitutional condition. Under 42 U.S.C. § 1997e(e), no recovery of monetary damages is allowed for emotional stress:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18).

See Munn Bey v. Department of Corrections, 839 F.Supp.2d 1 (D.D.C. 2011).

Here, Plaintiff seeks $10,000,000.00 in monetary damages from each Defendant for alleged violations of his Constitutional rights. ECF No. 1 at 8. However, Plaintiff does not allege he suffered any physical ailment or injury. Further, he fails to even allege that any physical injuries he might have suffered were the result of the events he describes in his complaint. Although the undersigned recognizes that Plaintiff makes a blanket claim

that he was denied medication for asthma and atrial fibrillation, even if the denial of medication occurred, Plaintiff does not claim that he suffered any physical injury as a result of the alleged denial. Even if Plaintiff had stated a claim upon which relief could be granted, he is ineligible to receive monetary damages unless he has demonstrated prior physical injury, which is not present here. Accordingly, Plaintiff is not entitled to monetary relief, and his claim must be dismissed with prejudice.

### B.      Improper Party

As to Plaintiff's attempt to name as Defendants "All Unnamed Personnel employed at the Counter Terrorism Unit", Plaintiff has failed to provide the names of parties, as required by Federal Rule of Civil Procedure Rule 10(a), which requires that the "title of a complaint must name all the parties." Second, Plaintiff is required to provide, "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 55 (quoting Fed. R. Civ. P. 8(a)(2) and Conley v. Gibson, 355 U.S. 41, 47 (1957)). The failure to name an individual defendant whom Plaintiff claims violated his civil rights is fatal to Plaintiff's claims against the "unnamed personnel".

Accordingly, because Plaintiff has failed to properly name or identify any individual "unnamed personnel", and to make a short and plain statement of the claim showing that he is entitled to relief from that party, as required by Federal Rule of Civil Procedure 10(a), this matter should be dismissed without prejudice as to those "unnamed personnel".

### C.      Failure to State a Claim Against Named Defendants

As to the named Defendants, Simmons, Conover, Hill, Simpkins, and Keller,

Plaintiff does not allege facts that establish a claim that his prison conditions were unconstitutional, or that any of those defendants personally engaged in an action which caused a violation of his Eighth Amendment rights. "[I]n order to withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir. 1993). Here, Plaintiff failed to allege that he suffered any physical injury as a result of the challenged conditions. Further, Plaintiff failed to allege that any suffered injury was proximately caused by the action or inaction of the named Defendants. Accordingly, for all of the above reasons, the complaint must be dismissed with prejudice as to those Defendants.

D.      Request for Injunctive Relief

Although Plaintiff alleges that his civil rights have been violated and that he is at risk for bodily harm in his current placement at Marion USP, he does not meet the four-part Winter test for issuance of a preliminary injunction. First, Plaintiff has not shown he is likely to succeed on the merits in regard to his Bivens claim. Although the undersigned has not reviewed each of the 182 federal actions in which Plaintiff is a party, on February 13, 2012, Plaintiff filed a civil rights action in this district, 1:12-CV-29, which raises many of the same issues raised herein.[8] In the intervening years, Plaintiff has not received the relief sought in this or any other federal court, and continues to raise similar, if not identical arguments. Accordingly, Plaintiff has failed to provide any evidence to support his likelihood of success on the merits, which would meet the first prong of the Winter test in

---

[8] There, among other claims, Plaintiff contended that after his transfer to USP Marion on November 29, 2010, he was classified as a terrorist, that agents of the government pressured Plaintiff's contacts and friends from contacting him, that he was denied meaningful access to the courts, and that he was the subject of a "bogus[ ] incident report". N.D.W.Va. 1:12-CV-29, ECF No. 1 at 9 – 10.

relation to his request for injunctive relief.

Second, Plaintiff has not demonstrated that he is likely to suffer irreparable harm in the absence of preliminary relief. Plaintiff failed to assert any claims that he was retaliated against by BOP officials, rather he contends that he was threatened with retaliation and placement in the SHU. However, Plaintiff provided no facts to support his claims. Moreover, even if Plaintiff's claims that he was threatened with placement in the SHU at USP Marion were true, such conduct, if it constituted "retaliation", did not occur in this jurisdiction. Further, at the time he filed his motion for an injunction, Plaintiff had suffered no articulated harm.

Accordingly, it appears to the Court that other than his broad claims, that Plaintiff has failed to submit any evidence which demonstrate a need for a temporary restraining order or preliminary injunction, and has failed to demonstrate that he is likely to suffer irreparable harm in the absence of injunctive relief. Thus, Plaintiff has failed to demonstrate that he meets the second prong of the Winter test.

Because Plaintiff is unable to meet either of the first two prongs of the Winter test, the Court need not consider the third or fourth prongs. Further, because Plaintiff is unable to meet all four parts of the Winter test for issuance of an injunction, his request for an injunction filed as part of his complaint, is without merit. Moreover, to the extent that Plaintiff's motion seeks to mandate action by the Defendants, Plaintiff has failed to demonstrate that he is entitled to extraordinary relief because he has failed to demonstrate that the exigencies of the situation demand such relief.

## V. RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that the Complaint

18

[ECF No. 1] be **DISMISSED WITH PREJUDICE**, based on Plaintiff's failure to state a claim upon which relief can be granted.

It is further **RECOMMENDED** that Plaintiff's request for injunctive relief contained in his complaint be **DENIED**.

**Within fourteen (14) days** after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the Honorable Gina M. Groh, Chief United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitation, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

This Report and Recommendation completes the referral from the district court. The Clerk is directed to terminate the Magistrate Judge's association with this case.

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* Plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet and to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the

United States District Court for the Northern District of West Virginia.

       DATED:      July 12, 2023

                                     /s/ *Robert W. Trumble*
                                     ROBERT W. TRUMBLE
                                     UNITED STATES MAGISTRATE JUDGE